Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAWN MURRAY,

*Plaintiff,*

v.

BJ'S WHOLESALE CLUB, INC., ABC CORP. 1-10 (SAID NAMES BEING FICTITIOUS AND PRESENTLY UNKNOWN), AND JOHN DOE 1-10 (SAID NAMES BEING FICTITIOUS AND PRESENTLY UNKNOWN),

*Defendants.*

Civil Action No. 17-9419
(JMV) (MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case concerns a slip and fall at BJ's Wholesale Club in Paramus, New Jersey. Currently pending before the Court is a motion for summary judgment by Defendant BJ's Wholesale Club, Inc. D.E. 25. The Court reviewed all submissions made in support and in opposition to the motion[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion for summary judgment is **DENIED**.

---

[1] Defendant's brief in support of its motion for summary judgment is referred to as "Def. Br." (D.E. 25-3); Plaintiff's brief in opposition to Defendant's motion is referred to as "Pl. Opp." (D.E. 30); and Defendant's reply brief in support of its motion for summary judgment is referred to as "Def. Reply" (D.E. 31).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background[2]

On August 27, 2016, at approximately 12:30 p.m., Plaintiff Dawn Murray went to BJ's Wholesale Club (the "Club") in Paramus, New Jersey. DSOMF ¶¶ 1, 6. Murray was with her sister. *Id.* ¶¶ 4, 7. During self-checkout, Plaintiff went to get boxes for their items. *Id.* ¶ 12. While walking toward the box bin, Plaintiff slipped, tried to catch herself but kept slipping, and ultimately landed on the floor. *Id.* ¶ 17. After falling, the bottom of Plaintiff's flip flop revealed a substance. *Id.* ¶ 22. Plaintiff was unaware of what the substance was that caused her to fall, but claimed it was wet. *Id.* ¶¶ 23, 26. 39. Plaintiff described the substance as a "dark liquid" with a "brown" color. *Id.* ¶ 31. Plaintiff did not recall seeing cart marks, dirt, or debris through the liquid. *Id.* ¶¶ 40-41. Plaintiff did not find out from any source what caused the liquid/substance to be on the floor or how long it was on the floor before her fall. *Id.* ¶¶ 43-45.

---

[2] The background facts are drawn from Defendant's statement of material facts not in dispute ("DSOMF"), D.E. 17-1, and Plaintiff's responsive statement to DSOMF ("Pl. Resp. to DSOMF"), D.E. 20.

Plaintiff also filed a supplemental statement of material facts ("PSSOMF"). D.E. 20. However, it appears that Plaintiff's supplemental statement as filed is missing facts 2-11. *Id.* at 13-14. The PSSOMF begins with a fact labeled 1 on page 13 and continues with facts labeled 12-15 on page 14. *Id.* As a result, Defendant's responsive statement to PSSOMF ("Def. Resp. to PSSOMF"), D.E. 25-2, only responded to the five facts set forth in D.E. 20. Upon receiving Def. Resp. to PSSOMF, Plaintiff did not request leave from the Court to file such facts, 2-11. Instead, Plaintiff refiled her responsive statement to DSOMF and her PSSOMF in her opposition brief. D.E. 30. The version of PSSOMF in her opposition brief contained facts 1-15, including the facts that had been missing in her initial filing (D.E. 20). *Id.*

The Court does not consider Plaintiff's supplemental facts 2-11. The Court's Order dated May 20, 2019 granting Defendant leave to file summary judgment stated that Plaintiff "shall refer to, and not refile" her supplemental statement of facts. D.E. 22. In addition, while the Court assumes the original filing was an oversight, Plaintiff did not request leave to file the missing facts – even after Defendant responded to only five supplemental facts. The Court refuses to consider facts 2-11 because it would be unfair to Defendant, which has not had a proper opportunity to respond to those facts.

Defendant described the general safety guidelines that the Club follows, as explained through the deposition of Daryoni Posso, an Asset Control Manager for the Club. *Id.* ¶¶ 51-57, 64, 74, 81, 85. The guidelines include regular store inspections of the floor in search of spills or debris. *Id.* However, Defendant did not indicate the exact timing of the inspections on the day in question. Defendant claims there is no video of the incident, and Posso believes that the Club is not aware of any witnesses to Plaintiff's fall. *Id.* ¶¶ 99, 107. Posso recalls writing down the information contained in the incident report, in which Posso wrote that the accident was preventable. *Id.* ¶¶ 86, 90.

Defendant claims that Plaintiff had no idea how long the substance had been present or where it came from. *Id.* ¶¶ 24-25. Plaintiff responds that "the substance was not there before she got to the store and that she believed it came from somewhere in the store." Pl. Resp. to DSOMF ¶¶ 24-25. There is also a dispute as to whether a food court with a self-serve soda fountain existed on the date of Plaintiff's accident. DSOMF ¶¶ 102-103, 111; Pl. Resp. to DSOMF ¶¶ 104, 111. Defendant acknowledges that at one time there had been a food court in the Club, but states that "the exact date the food court was replaced with a Dunkin' Donuts is unknown, but it believe [sic] to have been replaced in the fall of 2016." DSOMF ¶ 104. Plaintiff, in turn, claims that according to Posso's deposition, the food court was replaced in October 2016. Pl. Resp. to DSOMF ¶ 104. Defendant notes that "the soda fountain area, to the extent it existed at the time of Plaintiff's incident, was a far distance from where the spill area was located; approximately 35-40 feet away." DSOMF ¶ 111. Plaintiff contests Defendant's "subjective statement that the fall occurred a 'far distance' from where the soda fountain area was located." Pl. Resp. to DSOMF ¶ 111.

Defendant and Plaintiff also dispute various facts regarding the incident report written by Posso. PSSOMF ¶¶ 12-13; Def. Resp. to PSSOMF ¶¶ 2, 3. Most significantly, Plaintiff states that

Posso "indicated that the product involved in the fall was 'manufactured' by BJ's" and that in the report's causal factors section, Posso cited the "unsafe condition" as "improper housekeeping." PSSOMF ¶ 12. Plaintiff also states that in response to the prompt "[d]escribe all unsafe conditions, unsafe acts in detail," Posso wrote "wet floor by the food court and front exit right in front of empty box bin." PSSOMF ¶ 13. Defendant denies both facts. Def. Resp. to PSSOMF ¶¶ 2-3.

### 2. Procedural History

On August 10, 2017, Plaintiff filed her Complaint in the Superior Court of New Jersey, Bergen County, for personal injuries she claims to have sustained in a slip and fall accident. D.E. 1-3, Ex. A. On October 26, 2017, Defendant removed the case to this Court on the basis of diversity jurisdiction. D.E. 1. On June 7, 2019, Defendant BJ's Wholesale Club, Inc. filed the current motion for summary judgment. D.E. 25. Plaintiff opposed the motion, D.E. 30, to which Defendant replied, D.E. 31.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at

4

255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

"In negligence cases under New Jersey law, a plaintiff must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of plaintiff's injuries." *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990) (internal citation omitted). For business owners in particular, the common law imposes a duty "to maintain a safe premises

for their business invitees because the law recognizes that an owner is in the best position to prevent harm." *Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 306 (2010) (internal citations omitted). This duty of care "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003) (internal citations omitted).

"Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Id.* However, under New Jersey law, a plaintiff need not prove this element "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *Id.* In such situations, New Jersey courts afford plaintiffs "an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." *Id.* at 563-64. This burden-shifting policy is called the "mode-of-operation" rule, which New Jersey has adhered to since 1966 and which has been incorporated into New Jersey's model jury charges. *Id.* at 564 (citing *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426 (1966)).

"In all of its prior mode-of-operation cases, [the New Jersey Supreme Court] has emphasized the self-service nature of the defendant's business." *Prioleau v. Kentucky Fried Chicken, Inc.*, 223 N.J. 245, 260 (2015) (internal citations omitted). As the Court explained in *Prioleau*:

> When a business permits its customers to handle products and equipment, unsupervised by employees, it increases the risk that a dangerous condition will go undetected and that patrons will be injured. Thus, the mode-of-operation rule is not a general rule of

6

premises liability, but a special application of foreseeability principles in recognition of the extraordinary risks that arise when defendant chooses a customer self-service business model.

*Id.* at 262.

Defendant contends that because Plaintiff cannot identify the substance or where it came from, Plaintiff has not met her burden that "the Club caused the allegedly dangerous condition to exist or that it had either constructive or actual notice of it." Def. Br. at 7. On that basis, Defendant claims that Plaintiff's Complaint must be dismissed. *Id.* at 14. In turn, Plaintiff claims that the mode-of-operation rule applies because a food court containing two self-service soda fountains existed "in the vicinity" of the cash registers and bin of boxes. Pl. Opp. at 21. Defendant responds that the mode-of-operation rule does not apply because "there is absolutely no reference by the Plaintiff in the record indicating that the substance was soda, or even that a self-service soda machine definitively existed in the Club at the time of the incident." Def. Brief at 10-11.

There are genuine disputes as to material facts that preclude the Court from granting summary judgment. First, Plaintiff and Defendant contest whether a food court with self-serving soda machines existed on the date of the accident, calling into question whether the mode-of-operation rule might apply. *See* DSOMF ¶¶ 102-103; Pl. Resp. to DSOMF ¶¶ 104. Defendant states the date the food court was replaced was unknown,[3] while Plaintiff claims it was replaced in October of 2016. *Id.* Considering this critical issue of material fact, reasonable minds could differ as to whether the mode-of-operation rule applies.

The parties also dispute Posso's characterization of the accident in the incident report. PSSOMF ¶¶ 12-13; Def. Resp. to PSSOMF ¶¶ 2, 3. Plaintiff claims that the incident report written

---

[3] Although not an issue before the Court, it is surprising that the Club does not know when the food court and self-service soda machines were replaced in the Club.

7

by Posso, a Club employee, indicates that the product involved in the accident was "manufactured" by the Club and that one causal factor of the accident was "improper housekeeping." PSSOMF ¶ 12. Defendant disputes this fact, Def. Resp. to PSSOMF ¶ 2, and argues that Plaintiff has "not adduced any evidence" that the Club created the condition that caused the accident or had actual or constructive notice. Def. Br. at 7. The Court finds this, too, to be an issue of material fact upon which reasonable minds could differ on whether Defendant was negligent. Putting aside the mode-of-operation rule, Posso's statement as to the cause being attributable to "improper housekeeping" – if a jury finds that such statement was made – could reasonably be viewed as an admission by the Club's agent (Posso) of negligent conduct.

Ultimately, due to these genuine disputes as to material facts, the Court is precluded from granting summary judgment to Defendant.

## IV. CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Defendant BJ's Wholesale Club, Inc. (D.E. 25) is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: March 17, 2020

John Michael Vazquez, U.S.D.J.